## NORTHERN DEPARTMENT— CENTRAL DIVISION.
### JANUARY TERM, 1896.

L. D. KNEELAND, *as Constable, etc.*, v. NOAH A.
RENNER.

No. 14.

SALE OF PERSONAL PROPERTY—*Delivery—Governed by Intent.*
In a contract of sale of personal property the intent of the parties
controls, and if they intended a present vesting of title, the title
may in fact pass at once to the purchaser, although the actual de-
livery thereof is to be made subsequently; and whenever a dispute
arises as to the true character of an agreement, the question of
intent is rather one of fact than of law, and the finding of the trial
court, when sustained by the evidence upon this question, will not
be disturbed upon review.

MEMORANDUM.—Error from Jewell district court;
CYRUS HEREN, judge. Action in replevin by Noah A.
Renner against L. D. Kneeland, as constable of Burr
Oak township, Jewell county. Judgment for plaintiff.
Defendant brings the case here. Affirmed. The opin-
ion herein was filed January 9, 1896.

The statement of the case, as made by GILKESON,
P. J., is as follows :

This was an action in replevin brought by Noah A.
Renner against L. D. Kneeland, as constable of Burr
Oak township, in Jewell county, to recover the pos-
session of two colts, upon which the defendant, as
such constable, had levied as the property of one John
Laird. As a statement of facts in the case we can do
no better than take the findings of the court below, in
substance, as follows :

On February 8, 1890, Noah A. Renner and John

Laird entered into a contract and agreement whereby the said John Laird sold to said Noah A. Renner the property in controversy, being a span of colts, one of which was two years old and the other three; that it was at the time agreed between the said Renner and Laird that Renner should pay Laird the sum of $138 in cash, or execute his note for that amount, due and payable on the 1st day of March, 1890; that the said Laird should keep for the said Renner the property until the 1st of March, 1890, as Renner had not room for it at his place of residence, and that the property then and there became the property of said Renner; that a note was to be executed, or the cash paid, on the 10th of February, 1890, at Burr Oak, Kan., the contract of sale having been made at the residence of Laird in the country, and on Saturday afternoon; that Renner did, on Monday, the 10th of February, execute and deliver to Laird his note for the sum agreed upon; that the note was executed about 4 o'clock in the afternoon of said day, and was immediately placed in the Bank of Burr Oak by Laird as collateral security to secure the indebtedness owed by him to said bank, which was not quite as large as the amount of the note; that at the time the bank received the note as collateral it agreed with Laird to credit the amount of the note on his indebtedness to it, and pay him the difference, provided the Renner note was all right and would be paid without any trouble or question, and that the bank did so pay Laird the difference; that on or about the 15th of February, 1890, Renner went to the bank and paid the note so given, by executing to said bank another note; thereupon the bank assigned to him the obligations of Laird to the bank without recourse, and that Renner afterward delivered to Laird the indebtedness so taken from the

bank by him, without any further or other consideration between him and Laird ; that on February 10, 1890, there was issued by a justice of the peace of said county, in an action pending before him, in which Ira F. Hodson was plaintiff and the said John Laird defendant, a writ of attachment, and delivered to the plaintiff in error, as constable, under and by virtue of which he took into his possession the property in question ; that on the 21st day of February, 1890, Renner brought this action, and Kneeland gave a redelivery bond and held possession of the property, and on the 25th day of February, 1890, proceeded to and did sell the same to the plaintiff in the attachment, Ira F. Hodson ; that said Laird was a married man, the head of a family, and had no other team but the one in question ; that one of the colts had been broken to work and had been worked. prior to the levying of the writ of attachment, and the other had been broken to work about the time of levying, and that ever since they have been used together as a team ; that the value of the property in question at the time this action was commenced was the sum of $150 ; that the plaintiff has never had the actual possession of the property in controversy.

The case was tried by the court and special findings of fact were made as above set forth, together with conclusions of law.    Judgment was rendered in favor of defendant in error, Renner, of which Kneeland complains and brings the case here for review.

*T. S. Kirkpatrick*, and *I. F. Hodson*, for plaintiff in error.

*Eber P. Hotchkiss*, and *R. W. Turner*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : There is but one question in this case which requires our attention, the answering of which determines all other issues in the case. Did the title and ownership of the property in question pass to Renner at the time the contract was made, February 8, 1890? This we must answer in the affirmative.

The rule is, in sales of personal property, that the title passes at once on the sale, if such is the intention of the parties, though the seller is afterward to make a delivery of the goods sold. This intent may be expressly declared, or it may be implied from the circumstances surrounding the making of the contract. This, we think, has always been the rule. Nothing was required at common law to give validity to the sale of personal property except the mutual consent of the parties to the contract; and as soon as it was shown by competent evidence that it was agreed by mutual consent that the one should transfer the absolute property in the thing sold to the other for a money price, the contract was considered complete and binding on both parties. (*Hatch v. Oil Co.*, 100 U. S. 124.) Mr. Justice BREWER, in delivering the opinion of the court in *Bailey v. Long*, 24 Kan. 91, says:

" So long as T. W. B. [the vendor] had the title and the right to control the property, it might be taken for his debts, notwithstanding any agreement he might have made to sell it. It is unquestionably true that the intent of the parties controls, and if they intend a present vesting of title it did in fact pass at once to L. [the vendee], and that, though the actual delivery was to be made subsequently and under the management of the vendor."

Benjamin on Sales, § 309, says :

"Both of these contracts [the contract of sale and the contract to sell] being equally legal and valid, it is obvious that, whenever a dispute arises as to the true character of an agreement, the question is one rather of fact than of law."

The agreement is just what the parties intend to make it. If that intention is clearly and unequivocally manifested, *cadit quæstio*. This rule is again laid down in *Howell v. Pugh*, 27 Kan. 702. The intention of the parties, therefore, governing, and upon a dispute as to what the intention was, it being a question of fact, we merely look to the findings, which clearly show that it was the understanding and intent of the parties that the title did and should pass at once, viz., on the 8th of February, 1890. Is this finding sustained by the evidence? We think it is. Where an action has been tried by the court without the intervention of a jury, and the court makes special findings, the findings of the court are as conclusive in an appellate court as the verdict of a jury ; and when each finding of fact is sustained by some evidence, this court will not order the finding set aside, or grant a new trial, although the evidence be of the most unsatisfactory character, and although thereon this court, if sitting as a *nisi prius* court, might reach different conclusions of fact. (*Gibbs v. Gibbs*, 18 Kan. 419.) This has been the rule uniformly recognized from the existence of the supreme court down to the present time. (*Backus v. Clark*, 1 Kan. 303.) In the first reported case of this court, (*Westerman v. Evans*, 1 Kan. App. 1,) the same rule was reiterated. As we have said, this finding is sustained by the evidence. In fact all the findings of the court in this action are sus-

tained not only by some, or even a preponderance, but by all, the testimony.

The judgment in this case will be affirmed.

All the Judges concurring.